IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CHARLES RAYMOND MEYER and | ) Case No. 13-40614 |
| SCHERYL GAYE MEYER, | ) |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| CHARLES RAYMOND MEYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary No. 14-4045 |
| | ) |
| KANSAS DEPARTMENT OF LABOR, | ) |
| | ) |
| Defendant. | ) |

ORDER DIRECTING JUDGMENT IN FAVOR OF DEFENDANT

Plaintiff-Debtor Charles Raymond Meyer seeks a determination that the Defendant Kansas Department of Labor (KDOL) violated the discharge injunction by failing to pay him the full amount of unemployment benefits he claimed after having obtained a Chapter 7 bankruptcy discharge. KDOL contends that the Debtor obtained unemployment benefits without disclosing that he was gainfully employed and, under Kansas law and the doctrine of recoupment, it was entitled to deduct those overpayments from current benefits, despite the discharge. I previously denied the parties' cross-motions for summary judgment, concluding that a genuine issue of material fact existed as to the nature of the Debtor's conduct, and whether his dealings with KDOL constitute a "single integrated transaction" for purposes of recoupment, discussed below. At a pretrial conference

1

held after summary judgment was denied, the parties requested that they be permitted to submit the matter on stipulated facts and additional briefing, in lieu of a trial. As discussed more fully below, the Debtor has now conceded that the facts support recoupment, except that he asserts KDOL's right to recoupment did not survive the Debtor's discharge. For the reasons that follow, I find that it did survive the discharge, and therefore, Judgment will be entered in favor of Defendant KDOL.

## STIPULATED FACTS

To summarize the parties' detailed Stipulated Facts, on January 14, 2007, the Debtor applied for and was approved for unemployment benefits after purportedly losing his construction job. Ten months later, on October 10, 2007, KDOL received documents from the Debtor's employer showing that the Debtor was gainfully employed and earning wages while receiving unemployment benefits. That same day, KDOL mailed the Debtor a notice indicating that its initial audit found that Debtor failed to report wages for 24 weeks, resulting in a UI overpayment of $8,690. KDOL's October 10, 2007 notice invited the Debtor to dispute KDOL's initial investigative findings if he disagreed with the initial KDOL determination. The Debtor concedes that he received actual notice of KDOL's October 10, 2007 initial findings and that he did not respond.

On November 15, 2007, KDOL rendered an administrative determination finding that the Debtor "willfully and knowingly made false representations to receive benefits not due," and that the Debtor's misrepresentations resulted in an $8,690 overpayment of UI benefits. The determination expressly referenced Debtor's administrative appeal rights. The Debtor concedes he received the November 15, 2007 administrative determination, but says he did not read it and thus made no effort to appeal. The Debtor acknowledges that the November 15,

2007 administrative determination, and the administrative process leading up to the determination, comported with his due process rights and all applicable state and federal laws.

On July 12, 2010, Debtor again applied and was approved for unemployment benefits. On January 25, 2011 and February 10, 2011, KDOL received documents showing that Debtor was gainfully employed and earning wages while receiving unemployment benefits.

On May 17, 2011, KDOL mailed the Debtor a notice indicating that its initial audit found that the Debtor failed to report wages for 9 weeks, resulting in a UI overpayment of $3,915.

As before, the Debtor concedes he received actual notice of KDOL's May 17, 2011 initial findings, was invited to dispute them, and that he did not respond. On June 29, 2011, KDOL rendered an administrative determination finding that Debtor "willfully and knowingly made false representations to receive benefits not due," and that Debtor's misrepresentations resulted in a $3,915 overpayment of UI benefits. The June 29, 2011 administrative determination was mailed to the Debtor and, again, he was advised of his appeal rights. The Debtor made no effort to appeal. The Debtor concedes that the June 29, 2011 administrative determination and the administrative process leading up to the determination comported with his due process rights and all applicable state and federal laws.

Finally, on February 26, 2012, the Debtor applied and was approved for unemployment benefits after purportedly losing another job. On September 10, 2012 and September 14, 2012, KDOL received documentary evidence showing that Debtor was gainfully employed and earning wages. On September 11, 2012, after KDOL mailed the Debtor a notice indicating that its initial audit found that Debtor failed to report wages for 2 weeks, resulting in a UI overpayment of $672.

Again, the Debtor concedes he received actual notice of KDOL's September 11, 2012 initial findings, and failed to respond.  He again concedes he received actual notice of the September 11, 2012 initial findings, that he had the opportunity to respond, and that he failed to do so.  On September 17, 2012, KDOL mailed the Debtor another notice indicating that its initial audit found that Debtor failed to report wages for 9 weeks, resulting in a UI overpayment of $2,643.  The Debtor received actual notice, and failed to respond to either KDOL's September 11, 2012 notice or September 17, 2012 notice.

On October 25, 2012, KDOL rendered an administrative determination finding that the Debtor "willfully and knowingly made false representations to receive benefits not due," and that Debtor's misrepresentations resulted in a $2,643 overpayment of UI benefits.  The Debtor acknowledges that he received the determination, that he received all due process rights, and that he made no effort to appeal.

The Debtor filed this Chapter 7 bankruptcy case on February 28, 2013, and listed KDOL as an unsecured creditor for overpayment of unemployment benefits. The deadline for objecting to the Debtor's discharge was May 28, 2013.  KDOL did not file an adversary proceeding seeking a determination that the Debtor's debt to it was nondischargeable.  The Debtor received his discharge on May 30, 2013.

On November 3, 2013, the Debtor again applied for unemployment benefits with KDOL.  After processing this application, KDOL assigned him a Weekly Benefit Amount of $469.00.  He filed his first weekly claim by telephone on December 3, 2013, for the previous week of November 24, 2013 through November 30, 2013.

On December 10, 2013, KDOL sent the Debtor a letter which stated that the Debtor "received a determination or appeal decision that [he was] paid

4

unemployment insurance benefits to which [he was] ineligible." The letter advised the Debtor that his "future unemployment insurance benefits will be applied to the overpayment until such time as it is fully liquidated."

The Debtor filed his weekly claim each of the following four weeks. With each filing, KDOL sent the same letter stating the Debtor's "future unemployment insurance benefits will be applied to the overpayment until such time as it is fully liquidated." KDOL withheld four weeks of UI at $469 and $13 a week thereafter, totaling $1,889, to recoup the overpayment of UI previously made to the Debtor. KDOL advised the Debtor that the remaining $3,546.72 would be withheld from any future unemployment benefits.

On January 10, 2014, the Debtor's attorney sent KDOL a letter demanding the return of the $1,889 because it was recouped in violation of the discharge injunction from his bankruptcy case. On February 19, 2014, KDOL's attorney responded, advising Debtor's counsel that KDOL would not be returning the funds because KDOL was exercising its statutory and equitable rights to recoup fraudulently received unemployment compensation benefits against future benefits.

The Debtor filed this adversary proceeding on April 10, 2014, asserting that KDOL violated (and continues to violate) the discharge injunction by withholding ongoing unemployment benefits. KDOL asserts it is entitled to recover the overpayments under the equitable doctrine of recoupment, regardless of the discharge.

On September 9, 2014, I entered an Order denying the parties' cross-motions for summary judgment, concluding that, under the Eighth Circuit's standard for recoupment,[1] a genuine issue of material fact existed as to the nature of the

---

[1] *In re Terry* 687 F.3d 961 (8th Cir. 2012).

Debtor's conduct, and whether, considering "fairness and equity," his dealings with KDOL constitute a "single integrated transaction." As mentioned above, the parties requested that they be permitted to submit the matter on stipulated facts and additional briefing, which is now complete.

## LEGAL ANALYSIS

The Debtor now "concedes that the facts of this case meet the single integrated transaction test as set forth in *In re Terry*."[2] Therefore, the Debtor concedes that recoupment would apply, *except*, the Debtor asserts, KDOL's right to recoupment did not survive his Chapter 7 discharge. A brief discussion of recoupment is nevertheless helpful in order to put that question into context.

In general, where a debtor and a creditor both owe each other money, § 553 of the Bankruptcy Code gives the creditor a right of setoff, without violating the automatic stay, provided both debts arose before the bankruptcy and are in fact mutual.[3] Where both debts were not incurred pre-petition, recoupment is an additional, equitable exception to the automatic stay, which enables the creditor to similarly deduct from its debt to the debtor any amounts owed to such creditor by the debtor. "It is well settled . . . that a bankruptcy defendant [a creditor] can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment."[4] "Recoupment allows a defendant to deduct its claim from the amount the plaintiff could

---

[2] *Plaintiff's Memorandum Requesting this Court Grant Plaintiff's Complaint* (Doc. No. 34) at 5 (citing *In re Terry*, 687 F.3d 961 (8th Cir. 2012)).

[3] *In re University Medical Center*, 973 F.2d 1065, 1079 (3d Cir. 1992).

[4] *Reiter v. Cooper*, 507 U.S. 258, 270, 113 S.Ct. 1213, 1218 n. 2 (1993) (citation omitted).

otherwise recover *if* the claim arises out of the same transaction or subject matter on which the plaintiff sued."[5]

"For the purposes of recoupment, a mere logical relationship is not enough: the fact that the same two parties are involved and that a similar subject matter gave rise to both claims . . . does not mean that the two arose from the same transaction."[6]  Rather, "[t]o justify recoupment in bankruptcy, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations."[7]

In *Terry*, the debtor was receiving payments under a long-term disability policy, which gave the insurance company making those payments the right to receive social security disability payments awarded to him, including any retroactive award.  Shortly before filing a Chapter 7 bankruptcy petition, the debtor received a lump sum retroactive social security award, which the insurance company took pursuant to the disability policy.  After the Debtor filed his Chapter 7 case, the insurance company turned those funds over to the Chapter 7 trustee as a voidable preference.  The insurance company then attempted to recover that amount by making monthly deductions from the debtor's post-petition disability payments.  The debtor then filed an adversary proceeding against the insurance

---

[5] *In re Terry*, 687 F.3d at 965 (emphasis in original) (citing *In re NWFX, Inc.*, 864 F.2d 593 (8th Cir. 1989).  *See also University Medical Center*, 973 F.2d at 1079-80.

[6] *In re University Medical Center*, 973 F.2d at 1081 (citation and internal quotation marks omitted).

[7] *In re Terry*, 687 F.3d at 963 (quoting *University Medical Center*, 973 F.2d at 1081; *U.S. Postal Service v. Dewey Freight Sys., Inc.*, 31 F.3d 621, 623 (8th Cir. 1994)).

company, challenging the company's taking of the ongoing disability benefits.[8]  In response, the insurance company pled recoupment.  The Eighth Circuit held that, since the bankruptcy court had found that the obligations at issue "arose out of the same transaction," recoupment applied, regardless of any balancing of the equities.[9]  Rather, the Eighth Circuit held, "[f]airness and equity may influence whether two competing claims arise from the same transaction, but a court should not impose an additional 'balancing of the equities' requirement once a party meets the same-transaction test."[10]

The Debtor does not dispute that Kansas law permits KDOL to recover unemployment benefit overpayments from future benefits.  And, as stated, the Debtor now concedes that he received notice and full due process in the administrative proceedings, and that the facts meet the single integrated transaction test under *Terry*.  That being the case, under *In re Terry*, recoupment applies.  The Debtor asserts, however, that KDOL's right to recoupment did not survive his discharge.  In other words, the Debtor asserts, in order for KDOL's right to recoupment to have survived his discharge, KDOL was required to file, and prevail in, a nondischargeability action against him.

As the Debtor asserts, "[p]ursuant to 11 U.S.C. § 727(b), a discharge in a Chapter 7 case discharges the debtor from all debts that arose before the date of the filing of the bankruptcy petition, except those that are excepted from discharge."[11]  The discharge injunction "operates as an injunction against the commencement or

---

[8] The debtor also sought recovery of the lump sum payment from the trustee.

[9] *In re Terry*, 687 F.3d at 964.

[10] *Id.*

[11] *Everly v. 4745 Second Avenue, Ltd.*, 346 B.R. 791, 794 (B.A.P. 8th Cir. 2006).

8

continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor . . . ."[12] Section 523(a) lists nineteen exceptions to discharge, all but three of which are self-effectuating, meaning that no action is required before the discharge is entered.[13] Unemployment overpayments are not expressly listed among those debts excepted from discharge in § 523(a). Since the undercurrent of KDOL's claim is that the Debtor obtained the overpayments fraudulently, KDOL might have had a basis for filing a nondischargeability complaint under § 523(a)(2), but such an action is among the types of debts for which a complaint must be filed before the deadline,[14] and KDOL did not do so. And, as the Debtor points out, "bankruptcy courts have exclusive jurisdiction to determine whether debts are nondischargeable under § 523(a)(2), (4), or (6)."[15]

Thus, the Debtor asserts, KDOL has lost all opportunity to seek a determination of nondischargeability of the prepetition overpayments and KDOL cannot seek to enforce the Debtor's obligations by recouping it from post-discharge benefits. He asserts that, to allow KDOT to recoup the overpayments post-discharge, without having first obtained a determination of

---

[12] 11 U.S.C. § 524(a)(2).

[13] 11 U.S.C. § 523(c) ("Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge . . . ."); *Everly v. 4745 Second Avenue*, 346 B.R. at 795.

[14] *Id.*; Fed. R. Bankr. P. 4007(c) ("Except as provided in subdivision (d), a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a).").

[15] *Id.* at 791.

9

nondischargeability, renders § 523(a) and Rule 4007(c) meaningless as to these kinds of claims. He asserts that such a ruling would allow federal or state agencies to unilaterally determine whether a prepetition debt was incurred by fraud and thus excepted from discharge, thereby circumventing the premise that a discharge determination is exclusively within the jurisdiction of the bankruptcy courts.

The Debtor is correct that it is too late for KDOL to obtain a determination of nondischargeability of the prepetition overpayments, and that KDOL has no authority to make such a determination. However, this is not a nondischargeability action, and KDOL is not asserting that the overpayments were obtained by fraud in the context of § 523(a). Nor is it attempting to collect the debt from the Debtor by sending demand letters, garnishing, filing liens, or the like. Rather, KDOT is attempting recoupment, and "[c]ourts have generally held that the discharge injunction does not apply to prohibit recoupment."[16] Indeed, in *In re Terry*,

---

[16] *In re Fischbach*, 464 B.R. 258 (Bankr. D. S.C. 2012) (holding that defendants could recoup Medicare overpayments without violating discharge injunction) (citing *Powell v. FERLA and UFCW Health and Welfare Fund* (*In re Powell*), 284 B.R. 573 (Bankr. D. Md. 2002) (holding that neither the passage of time, nor the intervention of the automatic stay and discharge in bankruptcy alters or breaks the singleness of the transaction); *Thompson v. Bd. of Trustees of the Fairfax Co. Police Officers Ret. Sys.* (*In re Thompson*), 182 B.R. 140, 146 (Bankr. E.D. Va. 1995)). *See also In re Snodgrass*, 244 B.R. 353 (Bankr. W.D. Va. 2000) (holding that the Department of Veteran Affairs could recoup a special separation benefit from the debtor by withholding disability benefits without violating the discharge injunction); *In re Boyd*, 223 B.R. 536 (Bankr. E.D. Ark. 1998) (holding that the United States could recoup separation pay from future disability benefits; "Since the statutory directive to recoup the readjustment pay is not a debt or claim, there is no debt to discharge under Bankruptcy Code section 727 and the United States is entitled to recoup the readjustment pay."); *In re Beaumont*, 586 F.3d 776 (10th Cir. 2009) (holding that recoupment of VA disability benefits based on the debtor's receipt of a substantial inheritance did not violate the automatic stay or discharge injunction); *In re Jones*, 289 B.R. 188 (Bankr. M.D. Fla. 2002) (holding that the State Patrol could properly recoup disability overpayments made to former

although the case remained open to administer assets, the insurance company's attempts to recoup the insurance payment from the debtor's ongoing disability payments all occurred after the debtor there had received his discharge.[17] Although not expressly mentioning that the discharge had been entered, the Eighth Circuit held that the insurance company was permitted to recoup the payments because the bankruptcy court had held that the obligations arose out of a single integrated transaction. Although fairness and equity may play into the analysis, the only issue in the context of recoupment is whether the obligations arise out of a single integrated transaction. Since the Debtor has conceded that the facts of this case meet the single integrated transaction test set forth in *In re Terry*, there is no further balancing of the equities, and the discharge injunction does not prohibit KDOL from recouping the prepetition overpayments from post-discharge benefits. It has not, therefore, violated the discharge injunction by doing so.

That said, one additional point bears mentioning. At the outset of this case, KDOL filed a Motion to Dismiss, asserting, *inter alia*, that this Court lacked jurisdiction to decide this case because the postpetition unemployment benefits fall outside of the jurisdictional boundaries of 28 U.S.C. § 1334, which provides *in rem* jurisdiction over (1) property of the debtor as of the commencement of the case, and (2) property of the estate. I denied the Motion to Dismiss because, *inter alia*, the Debtor was asserting that KDOL violated the discharge injunction by seeking to recover a prepetition debt. Recoupment, is, in effect, an affirmative defense to

---

state trooper without violating discharge injunction); *In re Sigman*, 270 B.R. 858 (Bankr. S.D. Ohio 2001) (holding that recoupment by health insurance company of overpayments due to debtor's receipt of Social Security benefits was not a violation of discharge injunction).

[17] *In re Terry*, Case No. 08-43123, filed July 31, 2008, in the United States Bankruptcy Court for the Western District of Missouri.

an allegation of violation of the discharge injunction. Since a violation of the discharge injunction arises only in a bankruptcy case, it is core, and this Court has both statutory and Constitutional jurisdiction over it, even though recoupment may implicate state law.[18] Further, "[n]umerous courts have held that the bankruptcy court retains jurisdiction over core proceedings such as . . . violations of the discharge injunction under § 524 even after a case is closed."[19] Indeed, the Debtor has no other forum in which to assert the violation of a discharge injunction. In sum, if a debtor believes that an entity is attempting setoff or otherwise collecting a discharged debt, the forum in which to bring that action, and to determine whether recoupment applies, is the bankruptcy court.

ACCORDINGLY, because the Court finds that the Kansas Department of Labor is entitled to recoup prepetition overpayments from post-discharge benefits, it has not violated the discharge injunction by doing so. The Clerk of the Court is ORDERED to enter Judgment in favor of Defendant Kansas Department of Labor. Each party to bear its own costs.

IT IS SO ORDERED.

Dated: 12/3/2014

/s/ Arthur B. Federman
Chief Bankruptcy Judge

---

[18] 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11. . . ."). *Stern v. Marshall*, ___ U.S. ____, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); *Executive Benefits Ins. Agency v. Arkison*, ___ U.S. ____, 134 S.Ct. 2165, 189 L.Ed.2d 83 (2014).

[19] *In re Moffitt*, 406 B.R. 825, 830 (Bankr. E.D. Ark. 2009) (citations omitted).